ORIGINAL

1   Lawrence W. Schonbrun, Esq. (CSB No. 054519)
    Law Offices of Lawrence W. Schonbrun
2   86 Eucalyptus Road
    Berkeley, CA 94705
3   (510) 547-8070

4   Attorney for Plaintiff Class
    Member/Objector David Brennan
5

**Filed**

APR 0 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

6

7

8                   UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA
                     SAN JOSE DIVISION

10  In re:                              ) Class Action
                                        )
11  PALM TREO 600 and 650               ) No. 05-03774 RMW
    LITIGATION                          )
12                                      ) OBJECTION AND NOTICE OF
                                        ) INTENTION TO APPEAR AT HEARING
13                                      ) ON PROPOSED SETTLEMENT AND AWARD
                                        ) OF ATTORNEYS' FEES AND EXPENSES
14                                      )
                                        )
15  _____ )
                                          Date:  May 23, 2008
16                                        Time:  9:30 a.m.
                                          Dept:  6, Hon. R. M. Whyte
17

18  TO:  THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL
         PLAINTIFFS AND DEFENDANTS AND THEIR RESPECTIVE
19       ATTORNEYS OF RECORD:

20       PLEASE TAKE NOTICE that pursuant to the notice issued by

21  this Court, dated January 28, 2008, David Brennan, who is a

22  member of the above-denominated Plaintiff Class (*see* Exhibit

23  A), files the following written objection to the proposed

24  settlement and attorneys' fee and expenses request.  This Class

25  Member intends to appear through counsel and orally object at

26  the above-scheduled fairness hearing.  With the Court's

27  permission, he anticipates that his oral presentation will not

28  exceed 30 minutes.

1    OBJECTION

2    Plaintiff Class Member/Objector objects as follows:

3    1.    Lack of Proper Notice.

4    Class Member objects to the fee request of Class

5    Counsel on the ground that a Rule 23 motion for attorneys' fees

6    has not been made available to class members in a reasonable

7    manner prior to their being required to file an objection to

8    Class Counsel's fee request.

9    (1)  *Motion for Award of Attorney Fees.*  A claim
     for an award of attorney fees and nontaxable
10   costs must be made by motion under Rule
     54(d)(2), subject to the provisions of this
11   subdivision, at a time set by the court.  Notice
     of the motion must be served on all parties and,
12   for motions by class counsel, directed to class
13   members in a reasonable manner.

14   (2)  *Objections to Motion.*  A class member, or a
     party from whom payment is sought, may object to
15   the motion.

16   Fed.R.Civ.P. 23(h)(1) and (2) (emphasis added).

17

18   Class Member therefore requests that the Court

19   appoint a special master on behalf of the class to evaluate the

20   reasonableness of Class Counsel's fee and expense request.

21   (*See also* Objection No. 6, *infra*, further justifying the

22   appointment of a special master.)

23   The court may refer issues related to the amount
     of the award to a special master or a magistrate
24   judge, as provided in Rule 54(d)(2)(D).

25   Fed.R.Civ.P. Rule 23(h)(4).

26   Class Member also requests that the Court reschedule the

27   date of the hearing on objections to Class Counsel's attorneys'

28   fee and expense request.  Said continued hearing, to be held at

1  a reasonable time after Class Counsel have filed their fee and

2  expense application, and after Objector has had an opportunity

3  to file a comprehensive objection to Class Counsel's fee and

4  expense application.

5          In setting the date objections are due, the
        court should provide sufficient time after the

6          full fee motion is on file to enable potential

7          objectors to examine the motion.

8  Report of the Judicial Conference of the United States on Class
Action Settlements (Feb. 2006), Proposed Amendments to Fed. R.

9  Civ. Proc. 23, "Class Actions," Committee Note, Subdivision
(h), ¶ 2; emphasis added.

10

11          Class members' due process right to be heard at the

12  fairness hearing is violated under the terms of the notice and

13  the Settlement Agreement, as class members are being obligated

14  to file their objections to Class Counsel's fee request before

15  Class Counsel's fee application is filed with the Court.

16      2.   Insufficient Evidence Supporting Fee Request.

17          Class Member objects to Class Counsel's fee request

18  of up to $1,554,000.  Class Member requests that the Court

19  order Class Counsel to file their time records before any fee

20  is awarded in this litigation.

21      3.   Final Fee Award Premature.

22          The final fee award should be linked to the actual

23  class member receipt of settlement benefits.  Class Member

24  objects to any final award of attorneys' fees until the number

25  of class members who actually utilize settlement benefits is

26  known and considered by the Court in calculating a final

27  attorneys' fee award.

28          The relevant inquiry ... focuses a court's
        attention on the benefits actually received and

used by plaintiffs, [and] will determine not
only the often evident threshold question of
eligibility for fees, but it will also be
critical in determining the amount of a
reasonable fee award, in that the final award
must depend on a full assessment of the extend
of the benefits received by plaintiffs.
(*In re Prudential Ins. co. America Sales
Practice Litig.*, 148 F.3d 283 n.116 (3d Cir.
1998), *cert. denied*, 525 U.S. 1114 (1999);
emphasis added.)

Class Member requests that no final determination of an amount

of attorneys' fees be made until it is determined:

(a)   the number of class members who submit

valid and timely claims for cash rebates;

(b)   the total dollar amount of money rebated to

class members.

(c)   the number of class members who submit

valid and timely repair claims;

(d)   the number of class members whose phones

are repaired pursuant to the Settlement Agreement;

(e)   the total number of class members in a

class defined as:

all United States residents who purchased
in the United States a new Treo 600 or Treo
650 smartphone for their own use and not
for resale.

Numerous courts, both state and federal, academic

commentators, and the United States Congress have endorsed this

approach in awarding reasonable attorneys' fees in class

actions.   *See* attached Addendum A.

It should be noted that this issue was the concern of

proposed changes to Rule 23 of the Federal Rules of Civil

1   Procedure, entitled "Attorneys Fees:  New Rule 23(h)," in which

2   the comment reads:

3                One fundamental focus is the result actually
             achieved for class members, a basic
4            consideration in any case in which fees are
             sought on the basis of a benefit achieved for
5            class members.  See RAND, *Class Action Dilemmas,*
             supra, at 34-35.  The Private Securities
6            Litigation Reform Act of 1995 explicitly makes
             this factor a cap for a fee award in actions to
7            which it applies.  See 15 U.S.C. §§ 77z-1(a)(6);
             78u-4(a)(6) (fee award should not exceed a
8            "reasonable percentage of the amount of any
             damages and prejudgment interest actually paid
9            to the class")....  "Coupon" settlements may
             call for careful scrutiny to verify the actual
10           value to class members of the resulting coupons.
             (Emphasis added.)
11

12

13      For example, The Honorable Ronald M. Sabraw of the

14  Alameda County Superior Court ordered a reporting requirement

15  in the *Prestemon v. Echostar Communications Corp., et al.,* No.

16  2002-053014 (Super. Ct., Alameda Cty., Cal.), class action.

17  Judge Sabraw, in his Order dated September 3, 2004, and ruled:

18                The Court hereby approves attorney fees and
             costs in the sum of $458,000.00, payable
19           forthwith by Defendants to Plaintiff's counsel,
             and reserves jurisdiction to award additional
20           fees up to $200,000 following the accounting to
             be rendered by Defendants as provided in this
21           Order.

22                This matter is continued for a further
             hearing on the accounting to be rendered herein
23           to May 13, 2005 at 9:00 a.m. in Department 22 of
             the Alameda County Superior Court.  The
24           accounting ordered herein shall be filed with
             the Court and served on all counsel, including
25           Objectors counsel, Mr. Schonbrun, by May 6,
             2005.
26

27  *Id.,* Order 9/3/04, Nos. 2 and 3 (emphasis added).

28

4.   Parties Required to File Class Member Participation
Data.

Without regard to objection No. 3, Class Member
requests that the filing of the aforementioned information be a
condition of court approval.  This data is necessary to protect
the interests of the class and ensure the proper functioning of
the class action mechanism.  The late John Frank, the assistant
reporter to Benjamin Kaplan, who was the drafter of Rule 23, at
public hearings with regard to Rule 23 reform, noted "a
tremendous absence of empiric data" regarding class action
settlements.

The findings of the RAND Institute for Civil Justice
in *Class Action Dilemmas, Executive Summary* 24 (1999), reflect
the importance of providing data on class member settlement
participation:

> [J]udges should require ... reports on the
> process of claims administration — including the
> number of claims accepted and denied, reasons
> for denial....  These regular reports on claims
> administration should be available to the public
> for review.  (*Id.* at 490.)

This need for data was echoed by the Honorable Paul
V. Niemeyer,[1] at hearings with regard to Rule 23 reform:

> What is stunning about the way we proceed in
> rule revision ... is that we do it with a
> tremendous absence of empiric data.

---

[1] Paul V. Niemeyer, Chair of the Advisory Committee on Civil
Rules of Practice and Procedure to the Judicial Conference of
the United States and Judge on the Fourth Circuit Court of
Appeals.

1    The Federal Trade Commission supports the inclusion

2  of this type of information as part of the settlement approval

3  process:

> Finally, in the event the Court approves ... any settlement with a coupon component, <u>we urge the Court to require that counsel for the parties submit detailed information about the number and percentage of coupons redeemed</u>, the rate of redemption, and the number of coupons transferred during the life of the coupons. This data, which is of great interest to courts, legislators, various governmental enforcement agencies, legal scholars, and the community at large, will assist all in assessing the efficacy of nonpecuniary coupon settlements. Tracking actual redemption experience, of course, would be critical to implementing this approach to fee approval as well.

*Haese v. H&R Block, Inc., et al.*, No. CV-96-423 (Dist. Ct., Kleberg Cty., Tex., 105th Jud. Dist.) (Federal Trade Commission's Mem. P&A's as Amicus Curiae re the Proposed Class Action Coupon Settlement and Pet. for an Award of Attorneys' Fees, dated 6/4/03, at 31) (emphasis added).

    This request has been <u>successfully</u> raised and adopted in several recent class action settlements in California state courts.

    (a)  The Honorable Ronald M. Sabraw of the Alameda County Superior Court ordered a reporting requirement in the *Prestemon v. Echostar Communications Corp., et al.*, No. 2002-053014 (Super. Ct., Alameda Cty., Cal.), class action. Judge Sabraw, in his Order dated September 3, 2004:

> The Court having read and considered the pleadings and having heard the arguments of all counsel HEREBY ORDERS AS FOLLOWS:
> 1.  Objectors request for an accounting of benefits conferred upon the class is GRANTED. The Echostar Defendants are hereby ordered to render to the Court and (sic) accounting of all benefits conferred

upon the class pursuant to the terms of the settlement approved by the Court.
Specifically, Echostar must provide an accounting as follows:

    a.    The number of Claim Forms submitted by class members;

    b.    The number and the type of PPV Certificates redeemed by class members, for both Current Customers and Former Customers;

    c.    The total number of Echostar customer accounts that received a credit, whether against Subscription Fees or other charges, in whatever amount toward their accounts and the total amount of all such credits applied by Echostar on behalf of the class as a whole;

    d.    The number of Equipment Certificates issued and redeemed. (Echostar need only account for redemption of Equipment Certificates if they are returned by the retailer to Echostar following purchase of equipment.)

(b)    The Honorable Carolyn B. Kuhl of the Los Angeles County Superior Court ordered such a reporting request in the *Hotel Energy Surcharge Cases*, JCCP No. 4185 (Super. Ct., Los Angeles Cty., Cal.):

    Mr. Schonbrun:  I would like to make two points, if could.  The first has to do with my request that the Court require the parties as a part of approving these settlements that the number of class members who actually take advantage of these coupons be filed with the Court.

    . . . .

    The reason I make this request is a public policy reason, and it's because, as I stated in my papers, specific data on who actually takes advantage of these coupons is missing from the equation in the debate about class actions.

    (Hr'g Tr. at 2:28-3:1-11.)

1
2
3
4
5
6

> The Court:     With regard to the number of
> coupons used....  It ... tells us what
> cash value the class members made of
> the case, and that could be compared
> to, for example, ... the fees paid in
> the case.  And I think it is a useful
> exercise.
> (Hr'g Tr. at 33:20-28; 34:1-2;
> emphasis added.)

7   Coordination Proceeding Special Title (Rule 1550 (b)), No. JCCP
4185, Hr'g Tr. 10/20/02.

8
9
10
11
12
13

> [Defendant] is hereby ordered to file
> a document reporting, to the best its
> knowledge, the total number of
> Certificates that were redeemed at
> [defendants'] hotels before the
> conclusion of the Certificate
> Redemption....  This document shall be
> filed with this Court on or before
> March 15, 2004.

14   *Id.*, Second Amended Order of Final Judgment, ¶ 19, at 9, filed
15   11/12/02.

(c)   The Honorable Jack Komar of the Santa Clara

16   County Superior Court ordered such a reporting requirement in

17   *In re WebTV Networks Litig.*, Master File No. CV793511

18   (settlement fairness hearing of April 23, 2003).  Judge Komar

19   ordered the parties to the settlement to report back on August

20   29, 2003, to advise the court on the number of coupons

21   requested by class members and the amount of cash paid out to

22   class members.

23
24
25
26

> The parties are directed to file a
> report with the Court by August 29,
> 2003, describing the status of the
> settlement distribution and claims
> submitted and processed.

27   (d)   The Honorable Carl W. Holm of the San Mateo

28   Superior Court, while not adopting objector's specific

1 | language, nonetheless ordered a reporting requirement in the
2 | *Nuanes v. Insignia Financial Group, Inc., et al.,* No. 404228
3 | (Super. Ct., San Mateo Cty., Cal.) class action.  Judge Holm
4 | ordered that "the person most knowledgeable about claims
5 | administration is ordered to prepare and file a final
6 | accounting with regard to disposition of the settlement fund."

7 |                (e)  *See also In re California Indirect-*
8 | *Purchaser X-Ray Film Antitrust Litig.,* No. 960886 (Super. Ct.,
9 | San Francisco Cty., Cal.), before the Hon. A. James Robertson,
10 | class counsel filed a multipage spread sheet, listing the
11 | amount of the payments received by each class member from the
12 | settlement fund.

13 |     5.    The So-Called "Separate" Payment of Attorneys' Fees
   |         Is Improper.
14 |
15 |       Class Counsel are inadequate representatives of
16 | the class unless the two payments are merged.

17 |       Class Member objects to the separate payment of
18 | attorneys' fees by Defendant to Class Counsel.

19 |           Palm, Inc. will separately pay the fees and
   |           expenses that the Court awards.  These amounts
20 |           will not come out of any funds for payments to
   |           Class Members.
21 |
22 | (notice, *supra*, at 9).  This settlement structure is contrary
23 | to the class's interest and should be rejected by the court
24 | unless the parties agree to merge the two amounts.

25 |           The defendants and plaintiffs' counsel agreed on
   |           the record that any amount by which the fees and
26 |           costs defendants agreed to pay plaintiffs'
   |           counsel exceeds the sum awarded by the court
27 |           will be paid to the plaintiffs themselves).

28 | *Cisek, et al. v. National Surface Cleaning, Inc., et al.,* 954
   | F. Supp. 110 (S.D.N.Y 1997) (emphasis added).

1        (a)   Class Counsel are not adequate representatives

2   of the class as long as a conflict exists.

3            In a class action, adequate representation is a

4   due process requirement and Class Counsel must represent the

5   interests of absent class members at all times.  (See Phillips

6   Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985); Matsushita

7   Ele. Indus. Co., Ltd. v. Epstein, 116 S.Ct. 874, 885 (1996)).

8            An adequate representative must...be free
             from economic interests that are
9            antagonistic to the interests of the class.

10  Larson v. Dumke, 900 F.2d 1363, 1367 (9th Cir. 1990) (emphasis
11  added).

12           The class's interests are sacrificed when Class

13  Counsel structures the settlement process so that their fee

14  will be negotiated after the class's settlement.

15           Adequate representation requires that
             counsel vigorously and tenaciously protect
16           the interests of the class.  "Vigorous" and
             "tenacious" protection requires, at a
17           minimum, that counsel pursue their clients'
             claims.  Epstein v. MCA, Inc., 126 F.3d
18           1235, 1255 (9th Cir. 1997) (reversed on
19           other grounds).

20           A separate fee negotiation is:

21           [N]ot merely "inadequate" representation,
             it was hostile representation that served
22           the interest of counsel in getting a fee
             but did not serve the interests of [their
23           clients].  (Id.).

24

25           A denial of adequate representation is a denial

26  of due process.  A lawyer's obligation is to benefit the

27  client, not the lawyer.  That is, if the attorney is better off

28  with a separate fee negotiation but a better deal will result

    for the client if the settlement is structured as one fund, a

1  lawyer is obligated to make sure that the client's interests
2  are advanced.  The lawyer must subordinate his financial
3  interests to those of his client's.

4          Plaintiffs' and Defendants' counsel are
5  perfectly capable of understanding at the outset that the total
6  cost to the Defendant is the sum of the attorneys' fee and the
7  class recovery.  Both sides understand the obvious fact that in
8  giving the class less, there is more available to offer to
9  plaintiffs' counsel.  Therefore, Plaintiffs' counsel have a
10  financial incentive not to drive the hardest bargain they can
11  with regard to the class's recovery in the first negotiation.

12          Such a divergence of financial interest between
13  the client and the lawyer is a paradigmatic conflict of
14  interest.  Rule 23(a)(4) simply does not permit an attorney to
15  represent the class if he suffers from such a conflict of
16  interest.  It does not matter that Class Counsel negotiated a
17  reasonable settlement.  Rule 23(a)(4) regarding adequacy of
18  representation is concerned with procedural safeguards.

19          Even if, arguendo, the settlement was adequate,
20  an unconflicted attorney might have negotiated for more.  It is
21  the mere possibility that Class Counsel may negotiate to
22  further their own interests rather than the interests of the
23  class which makes his representation inadequate.  As counsel
24  for the class, their sole concern must be the best interests of
25  the class.  Class Counsel are not championing the cause of the
26  class when they negotiate their fee after the class's recovery.

27          While the conflict between a class and its
28  attorneys may be most stark where a common
        fund is created and the fee award comes out
        of, and thus directly reduces, the class

recovery [the negotiation of the attorneys'
fee by the parties subsequent to the class
negotiation will reduce the amount of the
money which the defendants intend to make
available to the class], there is also a
conflict inherent in cases like this one,
where fees are paid by an adversary from
its own funds -- the danger being that the
lawyers might urge a class settlement at a
low figure or on a-less-than optimal basis
in exchange for red carpet treatment on
fees.... It is because of the *potential*
risk that plaintiffs' attorneys and
defendants will team up to further
*parochial interests* at the expense of the
class that the Rule 23(e) protocol employed
by several circuits explicitly includes
*scrutinizing settlements for indicia of
collusion....*

*In re Chambers Development Sec. Litig.*, 912 F. Supp. 852 (W.D.
Pa. 1995), at 865 (emphasis added).

The plaintiffs' attorneys negotiating the
settlement, on the other hand, were subject
to an obvious conflict of interest with the
class in making the allocation.
. . .
These two amounts together constituted one
recovery fund from the viewpoint of the
defendant who could have little interest in
its allocation between the attorneys and
their clients.

*Schlensky v. Dorsey*, 574 F.2d 131, 150 (1978) (emphasis added).

This situation may raise a serious ethical
concern, as two circuits have cautioned,
because class counsel would be placed in
the position of negotiating a fee
ultimately destined for his pocket at the
same time that all thoughts ought to be
singlemindedly focused on the client's
interests.

*Obin v. District No. 9 of the Int'l Assoc. of Machinists and
Aerospace Workers*, 651 F.2d 574, 582 (1981).

1        Class Counsel have abandoned the class in order

2  to pursue a settlement structure in which they would be

3  representing their own interests in a separate fee negotiation

4  when they should be representing their clients at all times.

5               When counsel for the [plaintiff] class
             [negotiates their fees after the class's

6               recovery], there is inherent conflict of
             interest.  The defendant, and therefore its

7               counsel, is uninterested in what portion of
             the total payment will go to the class and

8               what percentage will go to the class

9               attorneys; accordingly, the defense
             operates as no brake against the invidious

10              effects of such a conflict of interest.

11 *Piambino v. Bailey*, 757 F.2d 1112, 1143 (1985) (emphasis

12 added).

13       The Court must recognize that regardless of how

14 well-intentioned Plaintiffs' counsel may claim to be, this

15 structure benefits Class Counsel at the expense of the class.

16              Yet to some extent the wool can be pulled
             over the court's eyes if the parties

17              negotiate an agreement under which legal
             fees will be paid separately by the

18              defendants.

19
  John C. Coffee,  Jr., *The Unfaithful Champion, supra*, p. 7

20 n.102 (emphasis added).

21       The following representation to the Court by

22 defense counsel Charles Schwartz in the *Horizon Healthcare*

23 *Corp. Litigation* sums up the impropriety of Class Counsel's

24 conduct:

25              Your Honor, I have, from the very
             beginning of this litigation, ...never

26              engaged in any discussions with the counsel
             regarding payment of attorneys' fees from

27              my perspective.  I think that's

28              inappropriate for a defendant's

1      representative to negotiate over [the
       amount of class counsel's fee]....

2

3          That [the subject of attorneys' fees],
       respectfully, Your Honor, is a
4      responsibility of the Court under Rule
       23(e), and is a matter between the class
5      and its counsel. And, therefore, it is the
       appropriate position for the defendants and
6      the defendants' counsel not to be involved
       in questions of agreement of amount of
7      attorneys' fees and the like.... In fact,
       that's one of the reasons that some
8      objectors object to settlements, because
       the defendant was involved in the question
9      of attorneys' fees.

10

11         So I have not negotiated over the
       amount of attorneys' fees....

12

*In re Horizon/CMS Healthcare Corp. Sec. Litig.*, No. 96-0442-
13     BB/LCS (D.N.M.), Transcript of Fairness Hearing Proceedings,
       9/12/97, at 103 (emphasis added).

14

15         A fiduciary acts solely for the interests of the

16     person whom they have agreed to represent.

17                 He who is in a fiduciary position cannot
                   serve himself first and his *cestuis* second.

18                 ....
                   It [the position as fiduciary] may not be
19                 exercised for the aggrandizement,
                   preference or advantage of the fiduciary to
20                 the exclusion or detriment of this *cestuis*.

21     *Pepper v. Litton*, 308 U.S. 295, 311 (1939).

22                 A person is a fiduciary who is invested
23                 with rights and powers to be exercised for
                   the benefit of another person.

24

25     H.C. Black, DICTIONARY OF LAW (The Law Book Exchange 1991), at
       490, definition of "Fiduciary" (emphasis added).

26

27         The enforcement of an attorney's fiduciary

28     responsibilities are of the utmost importance:

> As Judge Frankfurter observed, "From a
> profession charged with such
> responsibilities, there must exacted...the
> strictest observance of fiduciary
> responsibility...."

*Schware v. Board of Bar Examiners*, 353 U.S. 232, 247 (1957)
(concurring opinion) (emphasis added).

> A lawyer is a fiduciary of his client
> and...is presumptively barred from self-
> dealing at the expense of the person to
> whom he stands in a fiduciary relationship.
>
> (*Maksym v. Loesch*, 937 F.2d 1237, 1241 (7th
> Cir. 1991) (emphasis added)),

particularly in the class action context:

> [A]ttorneys...seeking to represent the
> class assume fiduciary responsibilities to
> the class...."

NEWBERG ON CLASS ACTIONS (3d ed.), Ch. 15, § 1503, *Relationship
Between Class Representative or Counsel and Absent Class
Members* (emphasis added).

    (b)   The Two Payments Must Be Merged into One Common
Fund.

A simple way to rectify Class Counsel's improper
conduct would be to merge both payments by the defendants into
one fund for the class, as suggested in the MANUAL FOR COMPLEX
LITIGATION. Absent such a change, Class Counsel have violated
their responsibility under Fed.R.Civ.P. 23(a)(4) -- failure to
provide adequate representation to class members and breach of
fiduciary duty to the class.

> If an agreement is reached on the amount a
> settlement fund and separately providing an
> amount for attorneys' fees...the sum of the
> two amounts ordinarily should be treated as
> a settlement fund for the benefit of the
> class...

MANUAL FOR COMPLEX LITIGATION 3D, *Class Actions, Settlements,* "Role
of the Court," 30.42 (Fed. Judicial Center, 1995), at 240
(emphasis added).

> These two amounts together constituted one
> recovery fund from the viewpoint of the
> defendant who could have little interest in
> its allocation between the attorneys and
> their clients.  The plaintiffs' attorneys
> negotiating the settlement, on the other
> hand, were subject to an obvious conflict
> of interest with the class in making the
> allocation.

*Schlensky v. Dorsey,* supra, 574 F.2d at 150 (emphasis added).

> Any proposed settlement should be presented
> in terms of the gross consideration to the
> Fund or class and the matter of attorneys'
> fees left for judicial determination and
> award.

*Norman v. McKee,* 290 F. Supp. 29, 36 (1968) (emphasis added).

> For all these reasons, class action Rules
> should treat direct payments of fees from
> the defendant to the plaintiffs' lawyers as
> payments into the common fund.  In
> addition, if the defendant does not oppose
> a fee below a certain amount, any fee award
> "saved" by a successful challenge to the
> award, or a *sua sponte* court reduction,
> should go to the class and not the
> defendant.

*Representing the Unrepresented,* 71 N.Y.U. L. REV. 439, at 504-05
(emphasis added).

> All amounts to be paid by the defendants
> are properly part of the settlement
> funds....

*In re General Motors Engine Interchange Litig.,* 594 F.2d 1106
(1979), at 1130 (emphasis added).

> *See also Bloyed v. General Motors Corp.,* 881

S.W.2d 422, 435 (Tex. Ct. App. 1994):

> Any settlement represents a total value
> figure that one party is willing to pay to
> end the controversy.  Attorneys' fees, even
> though they may not be technically deducted
> from the amount paid to the litigant,
> represent an integral part of the overall
> amount that the settling party is willing
> to pay, and, as such, they have a direct
> effect on the net amount that will
> ultimately be paid to the litigants.

(emphasis added).

An example of the proper payment of attorneys' fees is exemplified in the *In re Domestic Air Transportation Antitrust Litig.*, in which Class Counsel established a $50 million class cash fund for the purpose of the court's award of reasonable attorneys' fees and reimbursement of expenses consistent with their fiduciary duty to the class.

### VI.  Cash Portion of Settlements.

> As part of the settlements, settling
> defendants have deposited a total of $50
> million into escrow accounts.
> ...Plaintiffs' attorneys will apply to the
> court for an award of reasonable attorneys'
> fees and for reimbursement of costs and
> expenses of the litigation...to be paid
> from the cash portion of the
> settlements....

*In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677 (N.D. Ga. 1991).

The reasons for the class cash fund were expressed as follows:

> ...[I]n the negotiations which [class
> counsel] has described to you...for the
> settlement of this
> litigation...plaintiffs...early in the
> negotiations but very firmly advanced the
> proposition that they were not, for ethical
> reasons and for conflict of interest

1     reasons, subjecting...any portion of their
      fee to negotiation [with] defendants....

2     . . . .

3     We respected the ground on which they
      made that statement, the ethical

4     concerns that supported it, and, so,
      from the defendants' standpoint -- the

5     plaintiffs' entitlement to fees -- we
      have taken the position is not our

6     business and should not be....

7     *In re Domestic Air Trans. Antitrust Litig.*, No. 1:90-CV-
8     2485-MHS (N.D. Ga.) (Trans. Proc. before Senior Judge
      Marvin H. Shoob, Nov. 30, 1992, at 31-32 (emphasis added).

9

10         6.    An additional reason for the appointment of a

11    special master is the language in the notice which reads:

12              (a)   If you want to be represented by your own
                      attorney, you may hire one at your own
13                    expense.

14

15    Class Member objects to this language in the notice.   It

16    unnecessarily discourages class members from fully

17    participating in the fairness hearing.   Objector could be

18    entitled to have their counsel's fee and expenses reimbursed by

19    court order.   The language in the notice is incorrect,

20    misleading, and contrary to the interests of class members and

21    the effective functioning of the class action mechanism.

22    This statement constitutes misinformation in that the Court has

23    the power and authority to award reasonable attorneys' fees to

24    counsel for any class member objector.

25              (b)   The objection and any supporting papers must be
                      mailed to and actually received by each of the
26                    following no later than April 7, 2008:

27    (notice at 9).

28

1    Class Member objects to the above-referenced notice

2  provision that requires actual receipt of copies of the

3  objection on the date the objection is to be filed with the

4  court.  This direction is confusing and unnecessarily

5  burdensome.  Objectors should only be required to provide proof

6  of service of mailing by a certain date.  There is no reason

7  why class members should be held to a more onerous standard

8  than attorneys regarding proof of service for a pleading filed

9  with a Court.

10    7.    Class Member objects to any settlement provision that

11  requires class members to monitor the settlement Web site in

12  order to obtain settlement benefits.

13    Check the website (www.palzasettlement.com) to learn
     when the Effective Date has occurred to determine
14    when your right to repair will expire.

15  (notice at 6).

16

17    8.    Class Member objects to the request that he

18  provide his current address and telephone number in a

19  public pleading.  Such a request is inconsistent with the

20  privacy protections that should be accorded class members.

21  His address and telephone number are known to the Defendant

22  or, if necessary, can be obtained from his counsel.

23    Dated:  April 4, 2008

24

25    Respectfully submitted,

26

27    _Lawrence W. Schonbrun_
     Lawrence W. Schonbrun
28    Attorney for Plaintiff Class
     Member/Objector David Brennan

1

**PROOF OF SERVICE**

2      I declare that:

3      I am employed in the County of Alameda, California.  I am
4  over the age of 18 years and not party to the within action; my
   residence address is 44 Emery Bay Drive, Emeryville, California
5  94608.

6      On April 4, 2008, I served the attached:

7      OBJECTION AND NOTICE OF INTENTION TO APPEAR AT HEARING
8      ON PROPOSED SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND
       EXPENSES

9
       __X__       By Federal Express to the person set forth below by
10                 placing the original and a true copy thereof in a
                   sealed Federal Express envelope in a designated area
11                 for express mail pickup, addressed as follows:

12
   Office of the Clerk
13 U.S. States District Court for the Northern District of
   California, San Jose Division
14 280 South First Street, Room 2112
   San Jose, CA 95113
15
       __X__       By mail on the below-named parties in said action
16                 by placing a true and accurate copy thereof in a
                   sealed envelope, with postage thereon fully prepaid,
17                 and depositing the same in the United States Mail in
18                 Alameda County, California, to the addresses set forth
                   below:
19
   Ralph M. Stone, Esq.
20 Shalov Stone Bonner and Rocco
   485 Seventh Avenue, Ste. 1000
21 New York, NY 10018

22
   Penelope A. Preovolos, Esq.
23 Morrison & Foerster LLP
   425 Market Street
24 San Francisco, CA 94105

25
   ///
26
   ///
27
   ///
28

---

Proof of Service - No. 05-03774 RMW                                    1

1  | Clerk, Dept. 8
   | Hon. Ronald M. White
2  | Judge, U.S. District Court for the Northern District of
3  | California, San Jose Division
   | 280 South First Street
4  | San Jose, CA 95113
   | (courtesy copy)
5  |
6  |     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
7  |
   |     Executed on April 4, 2008.
8  |
9  |
   |                     Sandra Norris
10 |
   |                     Sandra Norris
11 |
12 |
...

1

### ADDENDUM A

2      a)   Numerous courts, both state and federal, academic

3   commentators, and the United States Congress have endorsed the

4   approach of calculating the final award of attorneys' fees after

5   the number of class members who actually utilize settlement

6   benefits is known and considered.

7              By conditioning the award of attorney's fees upon
               the claims actually submitted, the Court of
8              Chancery exercised its discretion equitably, to
               correlate the attorneys' compensation with the
9              structure of the settlement benefits the attorney
10             had negotiated for the class.

11  *Goodrich v. E.F. Hutton Group, Inc.* (Del. Supr.), 681 A.2d 1039
12  (1996), at 1049) (emphasis added).

13             Staging the fee award in this manner will ...
               help ensure that the fee award is proportionate
14             to the actual value created for the class ...
               [and] will emphasize the principle that in class
15             actions the interests of counsel who negotiate
               settlements should align with the interests of
16             the class.

17
    *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375,
18  380 (D. Mass. 1997) (emphasis added).

19             [O]ne should nevertheless ask whether a rule of
               law that would hold that there is an entitlement,
20             on the part of class counsel, to a legal fee
               fixed in relation to a maximum available fund
21             rather than benefits actually realized by class
               members, would be a desirable general rule....
22             In my opinion, the answer is certainly no.
23
24  *Wise v. Popoff*, 835 F. Supp. 977, 981 (E.D. Mich. 1993)
    (emphasis added).
25
               [The language in the PSLRA] is intended to
26             prevent the payment of attorney's fees based on
               an inflated settlement figure, where a large part
27             of the settlement is later returned to the
               coffers of the settling defendant because of a
28             low number of claims.  Before awarding fees,
               therefore, the Court must determine what portion

1    　　　　　　　of the settlement fund will actually be paid to
　　　　　　　　plaintiffs.
2

3    *Lyons v. Scitex Corp.*, 987 F. Supp. 271, 279 (S.D.N.Y. 1997)
　　(emphasis added).

4
　　　　　　　　I am not confident of the redemption rate that
5    　　　　　　has been projected and thus of the settlement's
　　　　　　　　total value.  Therefore I have determined to
6    　　　　　　delay [the] award of attorney fees until
　　　　　　　　experience shows how many vouchers are exercised
7    　　　　　　and thus how valuable the settlement really is.

8
　　*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
9    292 F.Supp.2d 184, 190 (D. Me. 2003) (emphasis added).

10   　　　　　　　This Court is concerned, however, about the
　　　　　　　　possibility that the actual value of the
11   　　　　　　settlement may fall significantly short of the
　　　　　　　　estimated value, thus drastically altering the
12   　　　　　　proportionality of the fee award to the benefit
　　　　　　　　actually conferred to class members.
13

14   *Bussie v. Allmerica Financial Corp., et al.*, No. 97-40204-NMG
　　(D. Mass. May 19, 1999), 1999 U.S. Dist. LEXIS 7793, *7
15   (emphasis added).

16
　　　　　　　　[T]o approve the fee requested provisionally,
17   　　　　　　permit its partial payment immediately, but
　　　　　　　　reserve the balance for payment either in full or
18   　　　　　　after any appropriate adjustment in the light of
　　　　　　　　actual experience under the settlement.
19   　　　　　　(emphasis added).

20
　　*Id.* at *9, *citing Hancock Fee Decision*, 989 F. Supp. at 379.
21

22   　　　　　　　"The court is of the view that of substantial
　　　　　　　　significance is the value of the benefit actually
23   　　　　　　received by those on whose behalf the action was
　　　　　　　　allegedly instituted.
24   　　　　　　. . . .
　　　　　　　　"The key element in assessing the reasonableness
25   　　　　　　of an attorney's fee and any adjustment made in
　　　　　　　　the amount requested is 'the relationship between
26   　　　　　　the amount of the fee awarded and the results
　　　　　　　　obtained.'"
27

28   *Clement v. American Honda Finance Corp.*, 176 F.R.D. 15, 31 (D.
　　Conn. 1997) (citations omitted; emphasis added).

> Thus at this point the extent of the benefit to
> the class cannot be determined with any degree of
> exactitude. It may be that so few will
> receive payment (with the unused portion of the
> settlement fund going back to Greyhound) that the
> benefits to the class will be "miniscule"....
>
> ....
>
> Under the circumstances, the fee determination
> will be reserved until all claims of shareholders
> entitled to participate in the settlement have
> been filed and determined.

*Voege v. Ackerman*, 67 F.R.D. 432 (S.D.N.Y. 1975), at 436

(footnotes omitted) and 437. *See also Bowling v. Pfizer, Inc.*,

922 F. Supp. 1261, 1283-84 (S.D. Ohio), *aff'd*, 102 F.3d 777 (6th

Cir. 1996) (holding back large portion of fee award until

additional "future" benefits to class were actually paid into

class fund).

In *Waters v. Int'l Precious Metals Corp.*, 190 F.3d

1291, 1294 (11th Cir. 1999), *cert. denied*, 530 U.S. 1223 (2000),

United States Supreme Court Justice Sandra Day O'Connor had the

following remarks about the importance of actual utilization of

class member benefits in setting reasonable attorneys' fees.

> In *Boeing v. Van Gemert*, 444 U.S. 472 (1980)....
> We had no occasion . . . however, to address
> whether there must be at least *some* rational
> connection between the fee award and the amount
> of the actual distribution to the class. The
> approval of attorney's fees absent any such
> inquiry could have several troubling
> consequences. Arrangements such as that at issue
> here decouple class counsel's financial
> incentives from those of the class, increasing
> the risk that the actual distribution will be
> misallocated between attorney's fees and the
> plaintiffs' recovery. They potentially undermine
> the underlying purposes of class actions by
> providing defendants with a powerful means to
> enticing class counsel to settle lawsuits in a
> manner detrimental to the class.... Although I

1        believe this issue warrants the Court's
         attention, this particular case does not present
2        a suitable opportunity for its resolution.

3  *Id.*, 530 U.S. at 1224-25 (emphasis added).

4        b)   Numerous academic commentators on the class action

5  mechanism support the use of evidence of actual utilization of

6  class member benefits as a factor in setting reasonable

7  attorneys' fees in class actions.

8              Professor Janet Cooper Alexander recommends:

9
            *Tie the lawyers' compensation directly to the*
10          *interests of the class.*
            The application, briefing and hearing on the fee
11          request should not take place until after all
            claims are filed, and the judge should be
12          required to take into account the actual benefit
            conferred on the class (as demonstrated by the
13          claims made)....

14
15  Janet Cooper Alexander, *Contingent Fees in Class Actions*, 47
    DePaul L. Rev. 347, 360 (emphasis added).
16
           Professor Judith Resnick notes:
17
            The innovation of the securities fee statute is
18          to limit judicial discretion by requiring that
            fees are a percentage of monies actually *received*
19          by class members, as contrasted to a percentage
            of a fund established.
20
21  Judith Resnick, *Money Matters:  Judicial Market Interventions*
    *Creating Subsidies and Awarding Fees and Costs in Individual and*
22  *Aggregate Litigation*, 148 Univ. Pa. L. Rev. 2119, 2122-23 n.6
    (2000) (underline added; italics in original).
23

24         The RAND Institute for Civil Justice notes:

25          To avoid rewarding class action attorneys for
            dubious accomplishments, judges should award fees
26          [based upon the benefits] *actually disbursed* to
            class members or other beneficiaries of the
27          litigation."
            ....
28          An added benefit of linking class action

attorneys' fees to disbursements is that it would
give the attorneys an interest in ensuring
expeditious and effective delivery of
compensation to class members.

RAND Institute for Civil Justice, "Achieving the Objectives of
Rule 23(b)(3) Class Actions," at 491.

Professor John C. Coffee, Jr., in his article *Claims Made Settlement: An Ethical Critique*, NEW YORK LAW JOURNAL (July 15, 1993), "Corporate Securities," notes:

[L]awyers are fiduciaries to the class they
serve, and when the fiduciary is economically
indifferent to the class's success, a "moral
hazard" problem arises.
. . . .
Escrow procedures could be utilized to ensure
that the attorney's return would rise and fall
with the class members' recovery in order to keep
their interests reasonably aligned.

*Id.* at 5 (emphasis added).

Professors Geoffrey P. Miller and Lori Singer note, in their article *Nonpecuniary Class Settlements*, 60 LAW AND CONTEMP. PROBS. 97, Duke Univ. Sch. of Law (Nos. 3 & 4, Summer & Autumn 1997):

As a final complication, the plaintiffs'
attorneys may use the valuation potential of the
settlement to shop for high fees among the
different jurisdictions that can hear the
case.... Again, this fee will come at expense of
the class's optimal recovery because the
attorneys' fee should be predicated on the actual
value of the fund the class receives.

*Id.* at 112 (footnotes omitted).

The importance of proper incentives to class counsel was noted in the Law Review article *Class Action Conflicts*, 30 U.C. DAVIS L. REV. 805 (1997):

> The attorneys' [fee] recovery should be tied to [the recovery] of the class; to the extent the attorneys hope to prosper in the representation, that reward should be a direct product of what they return to the class.
>
> ....
>
> [I]t impedes sweetheart deals by ensuring that attorneys' [fee] recoveries are directly tied to the actual return to the class....

*Id.* at 829 and 830 (emphasis added).

> *See* Fed.R.Civ.P. 23(h) advisory committee's note; *Strong v. Bellsouth Telecomms., Inc.*, 137 F.3d 844, 853 (5th Cir. 1998) (holding the trial court did not abuse its discretion in considering the actual results of the settlement).  The federal Class Action Fairness Act of 2005 addresses this issue directly by tying the attorney fee award to "redeemed" coupons.  Pub.L.No. 109-002, 119 Stat. 4 (2005).

Michael Northrup, *Restrictions on Class Action Attorney Fee Awards*, 46 S. Tex. L. Rev. 953 (Summer 1005), at n.83.

    c)    The noted federal jurist, the Honorable John F. Grady, in his article *Reasonable Fees:  A Suggested Value-Based Analysis for Judges*, 184 F.R.D. 131 (1999), states:

> Is the recovery something the client is going to use?  A benefit obtained for a client that is unused by the client does not justify a substantial fee.

    d)    Congress has demonstrated an a commitment to this principle in the wording of Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. §§ 77z-1(a)-(3)(B)(v)).

> Total attorneys' fees and expenses awarded by the court to attorneys for the plaintiff class [shall be based upon] the amount of any damages and prejudgment interest actually paid to the class.

*Id.* at § 77z-1(a)(6) (emphasis added).

1    See also the proposed Amendment of Senator Patrick

2  Leahy to the Class Action Fairness Act of 2003.

3              Leahy's bill would deal with noncash
             settlements — the coupon problem — by tying the
4            part of the fee paid to class counsel to the
             value of the coupon settlements actually
5            redeemed.... Leahy's bill is backed by consumer
             groups because it addresses [a] major problem in
6            class actions:  worthless coupon settlements ...
             said Jackson Williams, legislative counsel to
7            Public Citizen's Congress Watch.
                  "If the coupon is worthless and no one uses
8            it, the attorney gets no compensation," he said.
             "It will force attorneys to fight the meritorious
9            cases harder, which is good for consumers and
             good for business.  Honestly, there are some
10           class actions for trivial harms and they're only
             brought because of the possibility of a worthless
11           coupon settlement."

12  Marcia Coyle, *Senate Eyes Competing Class Action Bills*, THE
13  NATIONAL LAW JOURNAL (May 5, 2003).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Lawrence W. Schonbrun, Esq. (CSB No. 054519)
   Law Offices of Lawrence W. Schonbrun
2  86 Eucalyptus Road
   Berkeley, CA 94705
3  Tel: (510) 547-8070

4  Attorney for Plaintiff Class
   Member David Brennan

5

6

7

8

9          UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF CALIFORNIA
10              SAN JOSE DIVISION

11  In re:                        ) Class Action
                                  )
12  PALM TREO 600 and 650         ) Case No.:  C-05-03774 RMW
    LITIGATION                    )
13                                ) DECLARATION OF CLASS MEMBERSHIP
                                  ) OF DAVID BRENNAN
14                                )
                                  )
15

16      My name is David Brennan.

17      1.   I am a United States resident who purchased in the

18  United States a new ~[Treo 600] [Treo 650] smartphone.  I

19  purchased this Treo smartphone for my own use and not for

20  resale on April 14, 2006 ℗

21      2.   As a result of this purchase (see attached), I

22  understand I am a member of a class defined as "all United

23  States residents who purchased in the United States a new Treo

24  600 or Treo 650 smartphone for their own use and not for

25  resale."

26      3.   I have retained Lawrence W. Schonbrun as additional

27  counsel to represent my interests in the further proceedings in

28  this action.

Declaration of Class Membership                          1

4.    I authorize Mr. Schonbrun to take all steps which he deems necessary to protect and promote my interests in this litigation, including but not limited to filing an objection on my behalf.

I declare under penalty of perjury that the foregoing is true and correct.  Executed at Dublin, California, on this 31st day of March, 2008.

David Brennan

Serial No. PTPC 03N6H 1DE

---

Declaration of Class Membership                                2

CCS8632 AUTH ID: CCS8632, STORE: 1111, OVERRIDE REASON: PRICE MATCH EQUIPMENT, OVERRIDE FOR SKU: POTR650HK, ORIGINAL PRICE: $499.99, NEW PRICE: $199.99, DESCRIPTION: PER DENIS M

04/14/2006 - 12:00:00                                    BAN

CCS8632 Last Bill Date 20060406, Previous Balance $ 71.42, Total Balance Due $ 137.89 Charges for: 20060407 - 20060506: Recurring: $ 65.00, Other: $ -4.33, Usage: $ 1.40, Payments: $ 0.00, Adjustments $ 0.00, Discounts $ 0.00, Total Estimated Amount: $ 133.49 Estimated account Balance: $ 133.49

04/14/2006 - 12:00:00                                    BAN

CCS8632 Last Bill Date 20060406, Previous Balance $ 71.42, Total Balance Due $ 137.89 Charges for: 20060407 - 20060506: Recurring: $ 65.00, Other: $ -4.33, Usage: $ 1.40, Payments: $ 0.00, Adjustments $ 0.00, Discounts $ 0.00, Total Estimated Amount: $ 133.49 Estimated account Balance: $ 133.49

04/14/2006 - 12:00:00                                    BAN

CCS8632 AUTH ID: CCS8632, STORE: 1111, OVERRIDE REASON: PRICE MATCH EQUIPMENT, OVERRIDE FOR SKU: POTR650HK, ORIGINAL PRICE: $499.99, NEW PRICE: $199.99, DESCRIPTION: PER DENIS M

04/14/2006 - 12:00:00                                    BAN

CCS8632 AUTH ID: CCS8632, STORE: 1111, OVERRIDE REASON: PRICE MATCH EQUIPMENT, OVERRIDE FOR SKU: POTR650HK, ORIGINAL PRICE: $499.99, NEW PRICE: $199.99, DESCRIPTION: PER DENIS M

04/14/2006 - 12:00:00                                    BAN

CCS8632 AUTH ID: CCS8632, STORE: 1111, OVERRIDE REASON: PRICE MATCH EQUIPMENT, OVERRIDE FOR SKU: POTR650HK, ORIGINAL PRICE: $499.99, NEW PRICE: $199.99, DESCRIPTION: PER DENIS M