STAN S. MALLISON (SBN 184191)
HECTOR R. MARTINEZ (SBN 206336)
LAW OFFICES OF MALLISON & MARTINEZ
1042 Brown Avenue, Suite A
Lafayette, CA  94549
Telephone: (925) 283-3842
Facsimile:  (925) 283-3426

IRA P. ROTHKEN (SBN 160029)
THE ROTHKEN LAW FIRM
1050 Northgate Drive, Suite 520
San Rafael, CA  94903
Telephone: (415) 924-4250
Facsimile:  (415) 924-2905

RALPH M. STONE, (pro hac vice)
THOMAS G. CIARLONE, JR.
SHALOV STONE BONNER & ROCCO LLP
485 Seventh Ave., Suite 1000
New York, NY 10018
Telephone: (212) 239-4340
Facsimile: (212) 239-4310

JONATHAN SHUB (SBN 237708)
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 553-7980
Facsimile: (610) 453-6551

*Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **In re: PALM TREO 600 and 650 LITIGATION** | Master File No. C-05-03774 RMW |
| **This Document Relates To:** | **PLAINTIFFS' RESPONSES TO OBJECTIONS TO SETTLEMENT** |
| **All Actions** | Date: 5/23/2008<br>Time: 10:00 a.m.<br>Ctrm: 6, 4th Floor<br>Hon. Ronald M. Whyte |

Plaintiffs respectfully submit this memorandum in response to certain objections and other correspondence received in connection with the motion for final approval of the proposed class action settlement of this matter.

I.      Background

The class overwhelmingly approves of the Settlement.  Here, the parties estimate that there are over 2.7 million members of the proposed Settlement Class. Out of these 2.7 million members, we have only received eleven objections.  In relation to the size of the class, this is a tiny number of objections and shows that the Class overwhelmingly supports the Settlement, which, therefore, should be approved.  *See Maywalt v. Parker & Parsley Petroleum*, 864 F. Supp. 1422 (S.D.N.Y. 1994), *aff'd* 67 F.3d 1072 (2d Cir. 1995) (granting final approval where there were over 2700 objections), *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (upholding district court's approval of the settlement where there were 45 objections); *Browning v. Yahoo! Inc.*, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007)(approving the settlement with 139 objectors); *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (granting final approval where, of 13,176 class members, 8 objected).

More significantly, the objections received lack merit and should be rejected by the Court.  This memorandum will address the objections and other correspondence purporting to be objections seriatim below.


(1)     Correspondence from Arjuana Quinn

We have received three items of correspondence purporting to be objections, but none of which makes a meaningful attack on the Settlement.  The first is from a Palm Treo customer, Arjuana Quinn, who was satisfied with the product and who simply believed the Plaintiffs' claims lacked merit.  Ms. Quinn does not appear to be formally objecting.  If anything, this communication points to the risks of the litigation and the fact that there were satisfied customers of Palm.  Because this

2

1  correspondence "challenges the filing of the lawsuit, and not the fairness of…the

2  settlement…[it does] not support rejection of the settlement." *Glass v. UBS*

3  *Financial Services, Inc.*, 2007 WL 221862, at *8 (N.D. Cal. Jan. 26, 2007).

4  (2)    Correspondence from Joe Elek

5          The second item, an email from Mr. Joe Elek, similarly does not object to the

6  terms of the Settlement.  Rather, Mr. Elek explained that as a test of good faith, he

7  wrote to Palm to have his Treo repaired, and that as of the date of his email, he had

8  not heard anything in response.  That Mr. Elek has not received a response is not

9  meaningful in light of the fact that he apparently did not fill out any of the requisite

10  forms in the time period prescribed by the Settlement.  As this objection also fails

11  to challenge the fairness of the Settlement, it, too, should be rejected.

12  (3)    Correspondence from J. Martelino, Jr.

13          A third piece of correspondence, from J. Martelino Jr., can actually be seen

14  as supporting the terms of the Settlement.  While Mr. Martelino wrote to object to

15  the Settlement, his objection was only that he wanted to purchase a new phone prior

16  to the Redemption Period, which starts on the Effective Date.  Because Mr.

17  Martelino expressly stated that he wants to take advantage of the rebate offer

18  provided by the Settlement, he is lending support to the Settlement itself.  While

19  Mr. Martelino may want to purchase his new device in April 2008, it is not actually

20  necessary that he do so at that time.  Indeed, wireless carriers do not generally cease

21  service upon the expiration of a customer's contract.  Rather, service generally

22  continues under the old contract.  Thus, despite the fact that his contract expires in

23  April 2008, Mr. Martelino can choose to wait until the Redemption Period begins,

24  at which time he can both sign a new contract and purchase a new Palm device,

25  which will allow him to participate in the rebate portion of the Settlement.

26  Moreover, that Mr. Martelino chooses not to wait to purchase his new phone until

27  the Redemption Period begins does not support rejecting the Settlement,

28  particularly not where, as here, this Class Member otherwise sees the Settlement as

1    fair, reasonable and adequate.  As we have already explained, the timing of the

2    Redemption Period is affected by the relative strength of the claims and by the

3    understandable unwillingness of Palm to provide a remedy until the Settlement is

4    approved.

5        (4)    Objection of Michael G. Kassis

6            Mr. Kassis specifically objects to the rebate portion of the Settlement,

7    although he does not use the word "objection," arguing that it is insufficient for

8    such an expensive product.  In his attack, however, Mr. Kassis overstates the price

9    of new phones, arguing that they are $600.00, when, in fact, they start as low as

10   $99.00, and will total only $24.00 or $49.00 with the rebate.  *See* Defendant Palm

11   Inc's Comment on Objection by Richard Gans to Preliminary Approval of Class

12   Settlement (hereinafter "Palm's Comment") (citing

13   http://nextelonline.nextel.com/NASApp/onlinestore/en/Action/DisplaySelPhoneDet

14   ail?phoneSKU=PTR690HK).   Most phones are purchased under promotions

15   relating to new or renewed service contracts, and this rebate is stackable on top of

16   those promotions.  Mr. Kassis' objection must also fail, because "[t]he question is

17   not whether a better benefit could theoretically be provided, but whether the

18   settlement is "fair, adequate and free from collusion."'  *Browning*, 2007 WL

19   4105971, at *5 (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.

20   1998).  This Settlement is undoubtedly fair, adequate and free from collusion.  Mr.

21   Kassis seems to take issue with the fact that in order to take advantage of the rebate,

22   he would have to purchase another Palm product.  The Settlement does provide

23   another remedy, however, the right of repair, which he ignores.  Yet, the right of

24   repair is a valuable component of the Settlement.  Moreover, the right of repair

25   allows Class Members who do not want to purchase another product from Palm to

26   fully participate in and receive the benefits of the Settlement.  When determining

27   whether a proposed settlement is fair, adequate, and reasonable, the Court "must

28   consider the settlement in its entirety rather than considering only its component

parts." *Perez v. Tilton*, 2006 WL 2433240, at *2 (N.D. Cal. Aug. 21, 2006). Here, the Settlement provides substantial relief in the form of the right of repair. Taken together, the rebate and the right of repair provide the Class with a remedy of real value. Finally, that the right of repair is an option also negates Mr. Kassis' assertion that the Settlement is merely a promotional opportunity for Palm.

Mr. Kassis further suggests that Palm should provide a full three-year warranty to all those who purchased a smartphone. It is not possible, however, to renegotiate major terms of the Settlement at this point in the litigation. Moreover, the terms agreed upon were the product of lengthy and intensive negotiations, and Plaintiffs' Counsel believe the Settlement represents the best classwide recovery possible under the circumstances.

Mr. Kassis also appears displeased with the attorneys' fees request[1] and specifically states that the attorneys are getting rich. This, however, is not the case, as the fee request is more than reasonable. In fact, Plaintiffs' Counsel are seeking a fee that represents a negative multiplier to their lodestar. While the amount Palm will pay will compensate – or in fact undercompensate given the negative multiple - - Plaintiffs' Counsel for the time already spent in the case, this amount also includes any and all time Plaintiffs' Counsel expend through the conclusion of the Settlement, such that if Plaintiffs' Counsel spend an additional one hundred hours finalizing the Settlement, they will not receive any additional compensation. Additionally, the amount of the attorneys' fees includes counsel's expenses, which counsel have been paying for almost three years in the prosecution of this matter. By prosecuting this case, Plaintiffs' Counsel risked not only not being paid for their time, but they also risked not being reimbursed for their expenses. The fee award will compensate counsel for both. For these reasons, Mr. Kassis' objections to the Settlement and to the attorneys' fees should be rejected by the Court.

---

[1] Please note that we will be addressing Plaintiffs' attorneys' fee request in a separate application filed herewith.

1    (5)    Objection of Steven Messino

2        Similarly, an objection letter received from Steven Messino states that the

3    rebate amount is insufficient.  He implies that Palm should give him a full refund.

4    However, "[t]his is tantamount to complaining that the settlement should be

5    'better,' which is not a valid objection."  *Browning*, 2007 WL 4105971, at *5.  Mr.

6    Messino attempts to belittle the Settlement by stating that he would be able to

7    negotiate a comparable discount in 30 seconds from his service provider.  However,

8    Mr. Messino ignores the fact that because the rebate is stackable, it would be

9    applied to whatever discount he negotiates for himself, thereby increasing the value

10   of the rebate significantly.  Mr. Messino also argues that the Class Members should

11   not have to locate their receipts.  However, the Settlement provides that the proof of

12   repair or return can be in almost any form, including an invoice, receipt or credit

13   statement, which alleviates any burden associated with this requirement.  Finally,

14   courts have consistently upheld such requirements, as they are necessary to reduce

15   or avoid fraudulent claims.  *See Turner v. General Electric Co.*, 2006 WL 2620275,

16   at * (M.D. Fla. Sept. 13, 2006) (upholding settlement in which claim forms require

17   attachments).  This objection, therefore, is baseless and does not support rejecting

18   the Settlement.

19   (6)    Objection of Carl Ragel

20       Like Mr. Messino, Mr. Ragel also objects to the amount of the rebate.  He

21   believes the amount is insufficient and suggests that he should instead receive

22   $200.00, so that he may purchase a phone from a company other than Palm.  As

23   previously discussed, however, objecting to the Settlement because it theoretically

24   could be better is not a valid objection.  Moreover, Mr. Ragel ignores the

25   stackability element of the rebate.  This stackability element, which allows a Class

26   Member to apply the rebate on top of any other discount or promotion, provides a

27   substantial savings, thereby increasing the value of the rebate even further.

28

Plaintiffs' Responses to Objections to Settlements

1      While he argues that he would not want to purchase another Palm product,

2  Mr. Ragel ignores the right of repair portion of the Settlement, which allows Class

3  Members to reap the rewards of the Settlement without purchasing another device

4  from Palm.  Indeed, this right of repair, which can even be used by Class Members

5  who never experienced a problem with their Palm device while it was under

6  warranty, provides substantial relief to the Class Members.  Furthermore, Mr.

7  Ragel's objection is undercut by the fact that he filed a claim.  Certainly, if the

8  relief the Settlement provides is as "paultry" as Mr. Ragel asserts, and if he really

9  had no interest in owning another Palm product, he would not have filed a claim to

10  obtain the rebate.

11      Finally, Mr. Ragel also notes that he does not have the requisite

12  documentation.  However, Mr. Ragel did not indicate that he contacted T-Mobile or

13  Palm to see if either company retained records of the replacements.  Furthermore,

14  as discussed in greater detail later, Palm has been making efforts to contact third

15  parties to obtain the required records.  Finally, as previously noted, Class Members

16  are required to provide proof of their purchases so as to avoid fraudulent claims.

17  Thus, rejection of the Settlement on this basis is not warranted.

18  (7)    Objection of John S. Wenstrand

19      In his objections, Mr. Wenstrand said that the action against Palm was

20  "socially harmful."  He argued that as a result of the case, Palm's stock declined.

21  There is, however, no evidence linking the decline in Palm's stock to the case

22  brought by Plaintiffs' Counsel.  Indeed, this decline may be attributed to many

23  other factors, and more likely than not, has nothing at all to do with this case.  He

24  also asserts that cases like this one, and this one in particular, are a nuisance, are

25  damaging to the courts, and to the companies themselves.  The opposite is true.

26  Class actions like this one serve a valuable function.  *See In re Farmers Ins. Co.,*

27  *Inc. FCRA Litig.*, 2006 WL 1042450, at *11 (W.D. Okla. April 13, 2006) ("a class

28  action is the best way to resolve the claims of the purported class particularly

where, as here, defendants have engaged in standardized or uniform conduct affecting numerous consumers geographically dispersed and a consumer's potential recovery is most likely too small to justify the bringing of an individual action."); *Pub. L. 109-2, §2, Feb. 18, 2005 119 Stat. 4* ("Congress finds the following:.. Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm.").  In addition to actually obtaining significant relief for class members, the fact that class actions such as this may be brought serves to warn companies that they must respect and protect the public, by ensuring that the products they sell are safe and that they are not defective.  *See Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) (certifying class in a suit alleging that Ford sold cars with "defective engine intake manifolds," and noting that "in the absence of a class action, few class members would have any meaningful redress against Ford as a practical matter.").  That the public agrees with this is evidenced by the overwhelming support of class actions generally.  Finally, the assertion that this case is a nuisance is more of a statement about Mr. Wenstrand's bias against class actions generally, and does not render the Settlement unfair, inadequate or unreasonable.  *See Glass,* 2007 WL 221862, at *8.

Although he believes the case is "parasitic" and "socially harmful," Mr. Wenstrand also argued that the compensation offered was not sufficient and that it does not provide any benefit to the Class.  However, he then specifically stated that he was not suggesting that the settlement be larger.  As previously explained, the Court is looking to see that the Settlement is fair, adequate and free from collusion, not whether it could, theoretically, be better.  It is unclear how this Settlement, which provides an excellent remedy, does not benefit the Class.  Indeed, as a result of this Settlement, Class Members may purchase a brand new phone at significantly reduced and quite possibly minimal cost.  For those who prefer not to purchase a

1   new phone, the Settlement provides that Palm will repair the old phone, at no

2   expense to the Class Member.  In fact, Palm even pays for shipping.  This

3   Settlement undeniably benefits the Class.

4        In an argument that is at odds with his other arguments, Mr. Wenstrand also

5   criticizes the case because he suggests that the Settlement did not punish Palm.  The

6   purpose of the suit was not necessarily to punish Palm, but to provide a remedy to

7   Class Members, as this Settlement has done.  Thus, this criticism is irrelevant.  Mr.

8   Wenstrand argues that the Class Members should not have to fill out claim forms.

9   Courts have held that such a requirement "is a reasonable administrative procedure

10  which does not impose an undue burden…" *Turner*, 2006 WL 2620275, at *7.

11       With respect to Plaintiffs' Counsel, Mr. Wenstrand first suggests that they

12  should be disbarred.  This recommendation is clearly unreasonable, as Plaintiffs'

13  Counsel have done nothing deserving of punishment.  On the contrary, Counsel

14  brought a meritorious suit, and obtained an excellent Settlement for the Class.  Mr.

15  Wenstrand's recommendation should, therefore, be rejected.  Regarding attorneys'

16  fees, Mr. Wenstrand implied that they are too high.  However, Mr. Wenstrand

17  failed to realize that the fees in no way diminish the benefit to the Class because

18  they are being paid directly by Palm.  *See Turner*, 2006 WL 2620275, at *8

19  (overruling objections to the attorneys' fee request where the fees were being paid

20  directly by the defendant).  He also failed to appreciate that "the fee request is

21  reasonable, given the length, novelty and complexity of the litigation, the quality of

22  representation, the risk of nonpayment, the time and labor required, the benefits

23  obtained for the class through the settlement, multipliers applied in similar cases,

24  and the comparisons to a lodestar and percentage-of-recovery analysis."  *See*

25  *Browning*, 2007 WL 4105971, at *14.  Finally, Mr. Wenstrand failed to appreciate

26  not only that the multiplier in this case is a negative multiplier, but also that the fee

27  award requested will compensate counsel for the time and money already spent

28  prosecuting this case, and for "all future services that class counsel must provide…"

1   *Hanlon*, 150 F.3d, at 1029.  Because the fee request is eminently reasonable, Mr.

2   Wenstrand's objections should be rejected and the fee request approved.

3       Finally, despite Mr. Wenstrand's argument that this suit was harmful and his

4   contention that this lawsuit will drive up prices, in fact, rebates and other forms of

5   discounts are proven to benefit consumers.  Rebates and discounts cause companies

6   to reduce their prices, which in turn, causes competitors to reduce their prices.  That

7   rebates and discounts are beneficial to consumers is well-established.

8   (8)   <u>Objection of Eleanor Managad</u>

9       In Ms. Managad's objection, she states that she did not believe the right of

10  repair to be a real option because she has attempted to have her Treo fixed,

11  unsuccessfully, several times before.  That Ms. Managad's Treo was not properly

12  fixed does not render the Settlement unfair, unreasonable or inadequate.  The value

13  of the right of repair is nevertheless significant.  Indeed, for a phone that is out of

14  warranty, a repair could cost between $169.00-$199.00.[2]  Merely speculating that

15  she does not think the phone will be fixed, without more, is not a valid objection

16  supporting rejection of the Settlement.  Indeed, the terms of the proposed

17  Settlement Agreement expressly provide for a "right of repair." Ms. Managrad's

18  objection amounts to the suggestion that Palm would violate the Settlement

19  Agreement, and she therefore requests that this court reject the Settlement.

20  Plaintiffs note, however, that Ms. Managrad's position should be the opposite: this

21  Court's approval of the Settlement Agreement would, for the first time, provide a

22  court order ensuring that the devices are fixed.  It is the absence of such a court

23  order that would lead to the very issues with which Ms. Managad is concerned.

24      Ms. Managad also objects to the dollar amount of the rebate.  Again, as

25  previously discussed, this is not a valid objection warranting rejection of the

26  Settlement.  Like other objectors, Ms. Managad misstates the cost of a new Treo,

27  ─────────────
    [2] *See* Palm's Comment, (*citing* <u>http://www.palm.com/us/support/contact/us_warranty_a.html</u>).

28

1   which is actually much less than her estimate.  She also ignores the fact that her

2   savings could be significantly greater than just the $50.00-$75.00 rebate because

3   the rebate is stackable.  That Ms. Managad does not want to purchase another Palm

4   product also is not a reason reject the settlement, especially where, as here, the

5   Settlement is comprised of another component, the right of repair, which enables

6   her to receive the benefit afforded by the Settlement without having to purchase

7   another Palm product.

8          Finally, Ms. Managad states that Palm should have admitted that the product

9   is defective.  Palm, however, throughout the case, throughout the mediation, and to

10  date, continues to deny such allegations and maintains that the product is

11  "successful" and "widely acclaimed."  *See* Declaration of Hon. Daniel Weinstein

12  (Ret.) In Support of Preliminary Approval of Class Action Settlement (hereinafter

13  "Weinstein Decl.").  The continued denial is a material element of and predicate to

14  settlement.  Thus, requiring Palm, as part of the Settlement, to concede that the

15  product is defective would have meant that the Settlement would never have

16  occurred.  Moreover, that Palm did not admit that the product is defective does not

17  affect the terms of the Settlement, which are otherwise fair, reasonable and

18  adequate.

19  (9)    Objection of Kenneth E. Nelson and Jeffrey Young

20         Nelson and Young's objections (collectively referred to herein as the "Nelson

21  Objectors"), which were brought by Daniel S. Brown, Esq., fundamentally

22  misconstrue the terms of the Settlement and the benefits afforded thereby, and are,

23  therefore, meritless.  Contrary to the Nelson Objectors' argument, the Settlement

24  does provide real, quantifiable relief to Class Members.  As previously discussed,

25  the Settlement entitles each and every Class Member to a right of repair for any

26  hardware defects on their Treo 600 or Treo 650.  Additionally, if the warranty has

27  expired by the Effective Date, the right of repair is valid for 120 days from the

28  Effective Date, and if the warranty is still in effect on the Effective Date, the right

of repair will extend for 120 days beyond the expiration of their warranty.  *See* Final Signed Settlement Agreement, at 12. (hereinafter "Settlement Agreement."). This right of repair is extremely valuable compensation for Class Members, for, as previously explained, an out of warranty repair could cost between $169.00 and $199.00.[3]  In addition to the right of repair, Class Members with two or more repairs or replacements (in lieu of repair) are entitled to a rebate of either $50.00 or $75.00, which can be combined with other rebates or promotions, thereby offering Class Members significant value.  *See* Settlement Agreement, at 7-8.  As previously discussed, arguing that the Settlement could be better is not a valid objection. Moreover, "[i]t also fails to recognize that settlement, as a product of compromise, typically offers less than a full recovery."  *Browning*, 2007 WL 4105971, at *5.

The Nelson Objectors argue that they are forced to purchase two phones and are left with only one.  First, it would not be possible to be a member of this Class, or of any other products class, if not for the "first purchase" of the product at issue. Moreover, if Class Members are participating in the rebate portion of the Settlement, they are doing so because the phone they own currently is not functioning properly.  It is nonsensical that they would want to keep that phone in addition to the new phone they purchase with the benefit of the rebate.  The Nelson Objectors' presentation of the cost of the new phone is confusing and grossly overstates the actual amount to be paid.  They claim, for example, that a new phone would cost $189.99.  They reach this amount only by adding the cost of the original phone, purchased months or years ago, to the cost of the new phone.  Furthermore, the amount of the new phone they use is also overstated.  In fact, Class Members may only have to pay either $24.00 or $49.00, depending on which rebate the Class Member receives.  Significantly, this amount does not include any additional rebates or promotions which Class Members are entitled to use in conjunction with

---

[3] *See* Palm's Comment, (*citing* http://www.palm.com/us/support/contact/us_warranty_a.html).

the rebate from the Settlement.  In effect, with the Settlement, a Class Member could get as much as 75% off the price of a new Palm smartphone – as low as $24.00.  Without the benefit of the Settlement, this same phone would cost at least $99.00.  Thus, the Nelson Objectors' argument that purchasing a new phone with the Settlement is more costly than purchasing it without the benefits afforded by the Settlement is clearly erroneous.

The Nelson Objectors also grossly overcomplicate the Claims Process which, is neither "grueling, confusing or discouraging," nor is it a 14-step process.[4]  Counsel made this Court approved procedure as simple as possible under the circumstances.  The Nelson Objectors contend people will send their Palm devices to the wrong address.  In fact, Palm is even providing Class Members with a pre-paid mailing label for them to use to return their old Treos.  Class Members, therefore, will not have to contend with properly addressing the envelope, which was listed by Mr. Brown as a separate step in the claims process, or affixing the correct postage.  Significantly, courts consistently approve claims procedures like those here, and have held that objections to claim forms are meritless and are not valid reasons to reject a settlement.  *See Browning*, 2007 WL 4105971, at *6; *Turner*, 2006 WL 2620275, at *7.

The Nelson Objectors also object to the attorneys' fees requested.  However, like Mr. Wenstrand, they fail to consider the risk faced by Plaintiffs' Counsel of never being paid for their time or reimbursed for their expenses, that the fee request will pay attorneys for the time already expended as well as time they will expend

---

[4] Indeed, the Nelson Objectors' list "read[ing] the instructions" on the claim form as a separate step.  Two other steps the Nelson Objectors' include in their list require only that the Class Members "wait."  Step 9 reads: "wait for notice of whether the Claim is approved," and Step 14 reads: "wait for a check to arrive."  The Nelson Objectors' steps are also repetitive.  Step 8, for example, "[b]uy a new phone and keep the proof of purchase documentation" overlaps with Step 11, "[f]ind and insert the proof of purchase for the new phone."  Similarly, Step 6, "[s]end the Claim Form to the correct address" overlaps with Step 7, "[m]ake sure the Claim form is sent by July 28, 2008", and Step 12 "[s]end the old phone and proof of purchasing the new phone to the correct address" overlaps with Step 13, "[m]ake sure the old phone is sent within 90 days of receiving notice of approval."

1   going forward to finalize the Settlement.  The Nelson Objectors also ignore the fact

2   that as discussed in the accompanying declarations and memorandum in support of

3   the fee request, that the fee request is reasonable, particularly in light of the

4   substantial benefits provided by the Settlement, and the fact that the multiplier in

5   this case is a negative multiplier.  Finally, the Nelson Objectors ignore the fact that

6   the fee is being paid by Palm over and above the cost of the rebate being offered to

7   the Class, so that the fees awarded in no way diminish the benefits the Class

8   Members receive.

9        While the Nelson Objectors argue otherwise, including attorneys' fees in a

10   settlement agreement has been consistently upheld by the courts.  *See Campos v.*

11   *Western Dental Services, Inc.*, 2007 WL 2050976, at *1 (N.D. Cal. July 13, 2007)

12   (approving fee request, which, "[a]ccording to the stipulation of settlement,

13   defendants agreed to pay…"); *Trew*, 2007 WL 2239210, at * 5 (approving payment

14   of attorneys' fees by Volvo as agreed upon by the parties); *Turner,* 2006 WL

15   2620275, at *8 (overruling objections to attorneys' fees which were to be paid

16   directly by the defendant, which did "not diminish Benefits to the Settlement Class

17   Members, and were agreed to in arms-length negotiations.").  Furthermore, the fee

18   amount was negotiated only after all the other terms of the Settlement were agreed

19   upon, which is the proper way to negotiate a fee award.  *See Hanlon*, 150 F.3d at

20   1029.

21        Requiring Plaintiffs' Counsel to be paid pursuant to a payment plan is unfair

22   in this case.  Through this Settlement, Plaintiffs' Counsel provided a significant

23   benefit to the Class.  They dedicated themselves to prosecuting this action despite

24   the fact that they may never be paid for their time or be reimbursed for their

25   considerable expenses.  The attorneys' fees requested herein are fair and

26   reasonable, and Plaintiffs' request should, therefore, be approved.

27        The Nelson Objectors further argue that Plaintiffs' Counsel will cease to

28   represent the Class as soon as they are paid, and that there is no oversight to ensure

Plaintiffs' Responses to Objections to Settlements

1   that the Settlement is carried out properly.  This conclusory and unsupported

2   assertion is incorrect.  First, Palm will continue to provide reports to Plaintiffs'

3   Counsel regularly regarding the claims received, and the status of the process.  If

4   Plaintiffs' Counsel believe a claim was wrongly rejected, and the parties cannot

5   resolve the issue, they will go back to the Court, which retains jurisdiction over this

6   case until the parties report that the Settlement is complete.  Indeed, reputational

7   issues to one side, this Court's continuing jurisdiction is ample incentive for

8   Plaintiffs' Counsel to continue their diligence beyond Final Approval.  Because the

9   Settlement is fair, reasonable and adequate, and because the attorneys' fees are

10   reasonable, and because the objections raised by the Nelson Objectors are clearly

11   without merit, they should be rejected by the Court.

12   (10)   <u>Objection of David Brennan</u>

13       Finally, we turn to the objections asserted on behalf of David Brennan.  Mr.

14   Brennan's objections were brought by Lawrence W. Schonbrun, Esq., a well-

15   known professional objector who seeks out class members to represent for the

16   purpose of asserting objections.  The objections he makes here are duplicative of

17   objections he has made, unsuccessfully, in other class actions.  Because the

18   objections are meritless, they should be rejected here as well.

19       First, Brennan argues that notice of attorneys' fees was improper because it

20   does not contain adequate background information.  This argument must fail, as the

21   notice provided was consistent with the conventional notice given, was approved by

22   the Court, contained all necessary information, was the best practicable, fully

23   comported with Rule 23 and satisfied all due process requirements.  *See Churchill*,

24   361 F.3d at 575 ("because the notice was disseminated…before fees were required

25   to be requested, class members were accurately apprised of the current status of the

26   attorneys' fees award."); *See Browning* at *7 ('For approval, the notice need not

27   have been perfect.  Rather, it needed to be the 'best notice practicable under the

28   circumstances' and directed 'in a reasonable manner to all members who would be

1  bound…The…notice program adopted in this case met these requirements.").  In

2  addition to detailed notice, all notices directed interested class members to the case

3  website, which included additional information.

4      Brennan alleges that there is insufficient evidence supporting the fee request.

5  As discussed previously, the fees requested are reasonable.  As described herein, as

6  well as in the accompanying memorandum in support of the fee request, and the

7  Supporting Declarations, Plaintiffs' Counsel spent approximately 3,913.01 hours

8  prosecuting this case.  In addition, they have put forth all expenses, totaling

9  approximately $70,475.58.  Counsel did this despite the inherent and significant

10  risk that they might never receive any compensation.  Requiring Plaintiffs' Counsel

11  to file their time records, in addition to the Declarations submitted in support of the

12  fee request, is unnecessary.  *See Hemphill v. San Diego Assn' of Realtors*, 225

13  F.R.D. 616, 623 (S.D. Cal. 2005) (denying request for time sheets); *Lobatz v. U.S.*

14  *West Cellular of California, Inc.*, 222 F.3d 1142, 1149 (9th Cir. 2000) (finding that

15  because "nothing before the court suggested any collusion occurred…the district

16  court did not abuse its discretion by not examining class counsel's

17  contemporaneous time records, conducting a more intensive inquiry, or perhaps

18  enlisting the services of a special master."); *Dehoyos v. Allstate Corp.*, 240 F.R.D.

19  269, 335-36 (W.D. Tex. 2007) (rejecting objectors' request for production of time

20  sheets, holding that these "records contain privileged and non-discoverable

21  information, including descriptions of attorney-client communications, joint

22  prosecution information shared among counsel for plaintiffs, attorney work product

23  reflecting the mental impressions of counsel and/or information from which the

24  tactics and strategies employed by plaintiffs in this litigation could be inferred.")

25  (citation omitted).  There is nothing here to suggest that there was any collusion.

26  Settlement negotiations were, at all times, at arm's-length and occurred with the

27  assistance of two mediators.  Brennan's request, therefore, is without merit and

28  should be denied.

1    Brennan also argues that the fee award is premature.  First, this is the proper

2    time to request and receive payment, and it comports with the customary procedure.

3    Furthermore, as previously explained, Plaintiffs' Counsel prosecuted this case for

4    over two years and have yet to receive any compensation for either their time or

5    their expenses.  Any further delay is unwarranted and unjust.  Basing the fee award

6    on a reporting requirement is also nonsensical, where, as here, the fees are being

7    paid directly by Palm, not from a fund which would be diminished by payment of

8    attorneys' fees.  *See* Settlement Agreement, at 13; see also *See Turner*, 2006 WL

9    2620275, at *8 (approving request for attorneys' fees, and explaining that because

10   the fees were not coming from a fund, but were being paid directly by the

11   defendant, benefits to the class were not being diminished.).

12   Brennan's request that the parties file Class Member participation data is

13   similarly unnecessary and unwarranted.  Pursuant to the Settlement Agreement,

14   Plaintiffs' Counsel will be reviewing all rejected claims.  If Plaintiffs' Counsel

15   believes a claim was wrongly rejected, and they and Palm's counsel cannot agree,

16   the dispute will be brought to this Court, which will maintain jurisdiction over this

17   matter until the parties report to the Court that the Settlement is complete.

18   Requiring anything additional will severely slow down the claims process thereby

19   delaying receipt of the benefits to the Class, and will burden the Court.

20   Despite Brennan's argument to the contrary, payment of attorneys' fees

21   directly from the defendant is the superior method of payment in this case, as it

22   does not reduce the benefits received by the Class in any way.  This method of

23   payment will not hinder counsel's ability to represent the interests of the Class.

24   Counsel is dedicated to representing the Class through the end of the Settlement,

25   not, as Brennan implies, only until Counsel is paid.  This method of paying counsel

26   separately has consistently been upheld by the courts in this Circuit, and throughout

27   the country, which further supports Plaintiffs' Counsel's position, that this is a

28   superior method of awarding fees, and does not prevent counsel from adequately

1   representing the Class. *See Hanlon*, 150 F.3d at 1029 (approving district court's

2   award of attorneys' fees and costs in the amount of $5.2 million combined, which

3   were paid to Plaintiffs' Counsel separately by Chrysler); *Browning* at *13-14

4   (finding that the fee of $2.55 million, to be paid separately by the defendant, was

5   reasonable.); *Trew v. Volvo Cars of North America*, 2007 WL 2239210, at * (E.D.

6   Cal. July 31, 2007) (approving attorneys' fee award in the amount of $1,385,000,

7   which was to be paid separately by Volvo). Finally, as explained previously, the

8   negotiations concerning Plaintiffs' Counsel's fees occurred after all the other details

9   of the settlement were reached, which is not only proper but is also preferred,

10   thereby eliminating any potential conflict or even any semblance of impropriety.

11   *See Hanlon*, 150 F.3d at 1029.

12   Brennan's argument that the "two payments" be merged into one

13   demonstrates that he fails to properly understand the details of this Settlement and

14   is just reusing arguments he made in other class actions. There is no common fund

15   in this case, and, accordingly, there is no "second" payment. Rather, Class

16   Members will receive rebates directly from Palm. Thus, it is impossible to merge

17   the two payments, as he suggests. Moreover, Counsel's conduct was not improper-

18   - as Brennan asserts in conclusory fashion -- and does not need to be rectified.

19   Brennan does not provide any real attack on the Settlement itself. Instead, he

20   merely states, from time to time, that the Settlement is inadequate. He does not

21   explain why the Settlement is inadequate, or what else Plaintiffs' Counsel could or

22   should have obtained for the Class. He makes no effort to perform a risk analysis,

23   and he seems unaware of any risks in the case. As discussed earlier, stating that the

24   Settlement could be better is not a valid objection and should be rejected by the

25   Court.

26   Brennan also asserts that the language in the notice telling class members that

27   they may hire their own attorney is improper. This argument is without merit.

28   First, informing class members that they have the right to hire their own attorney is

Plaintiffs' Responses to Objections to Settlements                                    18

1   required by Rule 23.  FED. R. CIV. P. 23(c)(2)(B)(iv).  Additionally, he argues that

2   the language "discourages class members from full participating in the fairness

3   hearing," however the language does no such thing.  Indeed, seven of the eleven

4   objections we received were submitted without the apparent assistance of counsel.

5   These objectors were clearly not discouraged from participating.  Moreover,

6   Brennan's proposal, disclosure that the Court could require payment of an

7   objector's attorney's fees, is self-serving, as he is clearly concerned with his ability

8   to collect his own fees.  However, this proposal is also misleading and highlights

9   Brennan's unfamiliarity with this case.  Generally, the court will order an objector's

10  attorney's fees to be paid if there is a settlement fund from which these fees may be

11  paid, and then only under very limited circumstances.  Here, however, there is no

12  such fund; Palm is paying Plaintiffs' Counsel's fees directly.  Thus, it would be

13  improper for the Court to order Palm to pay an objector's attorney's fees without

14  Palm's consent.  An objector who relies on Brennan's proposed language would be

15  harmed if, as is most likely the case, the Court refused to direct payment of

16  objectors' counsel's fees to be paid by Palm.  On the other hand, no one is harmed

17  by the language included in the Notice.  It bears noting that this language was

18  approved by the Court, and a diverse array of Class Members have not been

19  dissuaded from submitting their views.  Because this language was proper, the

20  appointment of a special master is unnecessary.

21         Brennan's objection to the notice provision requiring Class Members'

22  objections be received by April 7, 2008 is similarly meritless.  This provision was

23  neither confusing nor burdensome, as shown by the fact that we have received

24  several objections by April 7, 2008.

25  Brennan's objection to the requirement that Class Members monitor the website

26  should also be rejected.  Treo users are by definition users of the Internet.  Brennan

27  fails to provide any reason for his objection and also fails to provide an alternative.

28

Plaintiffs' Responses to Objections to Settlements

1    Notably, other courts have approved similar requirements.  *See Browning*, 2007

2    WL 4105917, at *6-7.

3    (11)    Correspondence from Joseph D. Alkus

4            We received an email from Mr. Alkus in which he explained that he believed

5    his claim was rejected because he was unable to provide proof that he sent his Treo

6    600 in for repair.  He further explained that he had attempted to contact Palm to

7    request copies of the requisite documentation, but that he had not anything in

8    response.  We first note that Mr. Alkus' claim was not rejected.  The letter the

9    Claims Processing Administrator sent Mr. Alkus indicates that his claim could not

10   be processed without the required documentation, which they requested, and until

11   such time as it is received, his claim has been marked as "pending."  Second, Mr.

12   Alkus' Treo  was not sent to Palm for repair, but instead was sent to Asurion, a

13   third party to whose files Palm does not have access.  Upon receiving Mr. Alkus'

14   email, Plaintiffs' Counsel immediately contacted Palm's Counsel.  Palm has since

15   reached out to Asurion to obtain the information relating to Mr. Alkus' repairs.

16   Plaintiffs' Counsel, therefore, does not agree that Palm is failing to assist Class

17   Members or that Palm is thwarting Class Members' attempts to participate in the

18   Settlement.  Indeed, as evidenced by Palm's most recent action, it is making

19   significant efforts to deal with third parties so that all Class Members may receive

20   the full benefits of the Settlement.

21

22

23

24

25

26

27

28

## CONCLUSION

The Settlement is undeniably fair, adequate and reasonable, and is free from collusion.  The attorneys' fee request is also reasonable.  Therefore, the objections should be rejected and the Settlement and fee request should be approved.


Dated: May 14, 2008                 On Behalf of the Plaintiffs,


By: _____/s/_____
            Ira P. Rothken


IRA P. ROTHKEN (SBN 160029)
ROTHKEN LAW FIRM LLP
1050 Northgate Drive, Suite 520
San Rafael, CA  94903
Telephone: (415) 924-4250
Facsimile:  (415) 924-2905

RALPH M. STONE, (pro hac vice)
THOMAS G. CIARLONE, JR.
SHALOV STONE & BONNER LLP
485 Seventh Ave., Suite 1000
New York, NY 10018
Telephone: (212) 239-4340
Facsimile: (212) 239-4310

STAN S. MALLISON (SBN 184191)
HECTOR R. MARTINEZ (SBN 206336)
LAW OFFICES OF MALLISON & MARTINEZ
1042 Brown Avenue, Suite A
Lafayette, CA  94549
Telephone: (925) 283-3842
Facsimile:  (925) 283-3426

JONATHAN SHUB (SBN 237708)
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 553-7980
Facsimile: (610) 453-6551

Co-Lead Counsel for Plaintiffs