```
Lawrence W. Schonbrun, Esq. (CSB No. 054519)
Law Offices of Lawrence W. Schonbrun
86 Eucalyptus Road
Berkeley, CA 94705
(510) 547-8070

Attorney for Plaintiff Class
Member/Objector David Brennan
```

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>PALM TREO 600 and 650<br>LITIGATION | ) Class Action<br>)<br>) No. 05-03774 RMW<br>)<br>) RESPONSE TO CLASS COUNSEL'S STATUS<br>) REPORT (Dkt. 130) AND OBJECTION TO<br>) CLASS COUNSEL'S PENDING REQUEST FOR<br>) ATTORNEYS' FEES (Dkts. 101, 103, 109)<br>) |

Complaint Filed: Sept. 19, 2005
Trial Date: None Set

     Plaintiff Class Member/Objector David Brennan has reviewed the submission of Class Counsel (Dkt. 130) and believes that the facts contained therein support Objector's original Objection (Dkt. 81) that this Court not award attorneys' fees until it determines the benefits actually received by class members.  Now that that information is before the Court, it is clear that Class Counsel's request for $1,554,000 in attorneys' fees is simply unjustified for the meager benefits received by the class of 2.7 million persons.

     The Status Report (Dkt. 130) demonstrates that out of a class of 2.7 million persons, only 2,736 class members will be

---

receiving any known benefit from this class action.  A shocking 1/10th of 1 percent of the class!

Class Counsel are asking $1.5 million in attorneys' fees and expenses (Dkts. 101, 103, 109) for obtaining $277,252 for the class.  It works out as follows:

```
        873 class members seeking repairs for
        their Smartphones at $199 =              $173,727.00

        415 class members getting a
        $75 rebate =                                31,125.00

        1,448 class members getting a
        $50 rebate =                                72,400.00
                                                 _____
                              Total:             $277,252.00
```

The fee that Class Counsel are seeking would give them 85% of the total recovery in the case, which is unconscionable.

Objector requests that Class Counsel's fee be reduced to a reasonable percentage of the class's recovery of $277,252, or approximately $100,000 to $135,000, and that the remaining $1.4 million be provided as *cy pres* relief to benefit class members.  Class action case law supports this request.

Numerous courts, both state and federal, academic commentators, and the United States Congress have endorsed the approach of calculating the final award of attorneys' fees after the number of class members who actually utilize settlement benefits is known and considered.

> <u>By conditioning the award of attorney's fees upon the claims actually submitted</u>, the Court of Chancery exercised its discretion equitably, to correlate the attorneys' compensation with the structure of the settlement benefits the attorney had negotiated for the class.

1  *Goodrich v. E.F. Hutton Group, Inc.* (Del. Supr.), 681 A.2d 1039
2  (1996), at 1049) (emphasis added).

3  <u>Staging the fee award in this manner</u> will ... help
   ensure that the fee award is proportionate to the
4  actual value created for the class ... [and] will
   emphasize the principle that in class actions the
5  interests of counsel who negotiate settlements should
   align with the interests of the class.
6
   *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375,
7  380 (D. Mass. 1997) (emphasis added).
8
           [O]ne should nevertheless ask whether a rule of law
9          that would hold that there is an entitlement, on the
           part of class counsel, to a legal fee fixed in
10         relation to a maximum available fund rather than
           <u>benefits actually realized</u> by class members, would be
11         a desirable general rule....  In my opinion, the
           answer is certainly no.
12

13 *Wise v. Popoff*, 835 F. Supp. 977, 981 (E.D. Mich. 1993)
   (emphasis added).
14
           [The language in the PSLRA] is intended to prevent
15         the payment of attorney's fees based on an inflated
           settlement figure, <u>where a large part of the
16         settlement is later returned to the coffers of the
           settling defendant</u> because of a low number of claims.
17         Before awarding fees, therefore, the Court must
           determine what portion of the settlement fund will
18         actually be paid to plaintiffs.
19
   *Lyons v. Scitex Corp.*, 987 F. Supp. 271, 279 (S.D.N.Y. 1997)
20 (emphasis added).
21
           I am not confident of the redemption rate that has
22         been projected and thus of the settlement's total
           value.  Therefore I have determined to delay [the]
23         award of attorney fees until experience shows <u>how
           many vouchers are exercised</u> and thus how valuable the
24         settlement really is.
25
   *In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
26 292 F.Supp.2d 184, 190 (D. Me. 2003) (emphasis added).
27
           This Court is concerned, however, about the
28         possibility that the actual value of the settlement
           may fall significantly short of the estimated value,

---
Response to Class Counsel's Status Report (Dkt. 130), etc.
- No. 05-03774 RMW                                              3

> thus drastically altering the proportionality of the <u>fee award to the benefit actually conferred to class members</u>.

*Bussie v. Allmerica Financial Corp., et al.*, No. 97-40204-NMG (D. Mass. May 19, 1999), 1999 U.S. Dist. LEXIS 7793, *7 (emphasis added).

> [T]o approve the fee requested provisionally, permit its partial payment immediately, but reserve the balance for payment either in full or after any appropriate adjustment in the light of <u>actual experience under the settlement</u>.

*Id.*, 1999 U.S. Dist. LEXIS 7793 at *9, *citing Hancock Fee Decision*, 989 F. Supp. at 379 (emphasis added).

> "The court is of the view that of substantial significance is the value of the benefit <u>actually received</u> by those on whose behalf the action was allegedly instituted.
> ....
> "The key element in assessing the reasonableness of an attorney's fee and any adjustment made in the amount requested is 'the relationship between the amount of the fee awarded and the results obtained.'"

*Clement v. American Honda Finance Corp.*, 176 F.R.D. 15, 31 (D. Conn. 1997) (citations omitted; emphasis added).

> Thus at this point the extent of the benefit to the class cannot be determined with any degree of exactitude.  It may be that so few will receive payment (with the unused portion of the settlement fund going back to Greyhound) that the benefits to the class will be "miniscule"....
> ....
> Under the circumstances, the fee determination will be reserved until all claims of shareholders entitled to participate in the settlement have been filed and determined.

*Voege v. Ackerman*, 67 F.R.D. 432 (S.D.N.Y. 1975), at 436 (footnotes omitted) and 437.  *See also Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1283-84 (S.D. Ohio), *aff'd,* 102 F.3d 777 (6th Cir. 1996) (holding back large portion of fee award until additional "future" benefits to class were actually paid into class fund).

In *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999), *cert. denied,* 530 U.S. 1223 (2000), United States Supreme Court Justice Sandra Day O'Connor had the following remarks about the importance of actual utilization of class member benefits in setting reasonable attorneys' fees.

> In *Boeing v. Van Gemert*, 444 U.S. 472 (1980)....  We had no occasion ... however, to address whether there must be at least *some* rational connection between the fee award and the amount of <u>the actual distribution to the class</u>.  The approval of attorney's fees absent any such inquiry could have several troubling consequences.  Arrangements such as that at issue here decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery.  They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class....  Although I believe this issue warrants the Court's attention, this particular case does not present a suitable opportunity for its resolution.

*Id.*, 530 U.S. at 1224-25 (emphasis added).

Numerous academic commentators on the class action mechanism support the use of evidence of actual utilization of class member benefits as a factor in setting reasonable attorneys' fees in class actions.

Professor Janet Cooper Alexander recommends:

> *Tie the lawyers' compensation directly to the interests of the class*.
> The application, briefing and hearing on the fee request should not take place until after all claims are filed, and the <u>judge should be required to take into account the actual benefit conferred on the class (as demonstrated by the claims made)</u>....

Janet Cooper Alexander, *Contingent Fees in Class Actions*, 47 DePaul L. Rev. 347, 360 (emphasis added).

Response to Class Counsel's Status Report (Dkt. 130), etc.
- No. 05-03774 RMW                                                    5

1        Professor Judith Resnick notes:

2            The innovation of the securities fee statute is to
             limit judicial discretion by requiring that fees are
3            a percentage of monies actually *received* by class
             members, as contrasted to a percentage of a fund
4            established.

5   Judith Resnick, *Money Matters:  Judicial Market Interventions
    Creating Subsidies and Awarding Fees and Costs in Individual
6   and Aggregate Litigation*, 148 UNIV. PA. L. REV. 2119, 2122-23 n.6
    (2000) (underline added; italics in original).
7
         The RAND Institute for Civil Justice notes:
8
             To avoid rewarding class action attorneys for
9            dubious accomplishments, judges should award fees
             [based upon the benefits] *actually disbursed* to class
10           members or other beneficiaries of the litigation."
             ....
11           An added benefit of linking class action attorneys'
             fees to disbursements is that it would give the
12           attorneys an interest in ensuring expeditious and
             effective delivery of compensation to class members.
13
    RAND Institute for Civil Justice, "Achieving the Objectives of
14  Rule 23(b)(3) Class Actions," at 491.

15       Professor John C. Coffee, Jr., in his article *Claims Made

16  Settlement:  An Ethical Critique*, NEW YORK LAW JOURNAL (July 15,

17  1993), "Corporate Securities," notes:

18           [L]awyers are fiduciaries to the class they serve,
             and when the fiduciary is economically indifferent to
19           the class's success, a "moral hazard" problem arises.
             ....
20           Escrow procedures could be utilized to ensure that
             the attorney's return would rise and fall with the
21           class members' recovery in order to keep their
             interests reasonably aligned.
22
    *Id.* at 5 (emphasis added).
23
         Professors Geoffrey P. Miller and Lori Singer note, in
24
    their article *Nonpecuniary Class Settlements*, 60 LAW AND CONTEMP.
25

26

27

28

---
Response to Class Counsel's Status Report (Dkt. 130), etc.
- No. 05-03774 RMW                                                  6

PROBS. 97, Duke Univ. Sch. of Law (Nos. 3 & 4, Summer & Autumn 1997):

> As a final complication, the plaintiffs' attorneys may use the valuation potential of the settlement to shop for high fees among the different jurisdictions that can hear the case....  Again, this fee will come at expense of the class's optimal recovery because the attorneys' fee should be predicated on the actual value of the fund the class receives.

*Id.* at 112 (footnotes omitted).

The importance of proper incentives to class counsel was noted in the Law Review article *Class Action Conflicts*, 30 U.C. DAVIS L. REV. 805 (1997):

> The attorneys' [fee] recovery should be tied to [the recovery] of the class; to the extent the attorneys hope to prosper in the representation, that reward should be a direct product of what they <u>return</u> to the class.
> ....
> [I]t impedes sweetheart deals by ensuring that attorneys' [fee] recoveries are directly tied to the <u>actual return to the class</u>....

*Id.* at 829 and 830 (emphasis added).

> *See* Fed.R.Civ.P. 23(h) advisory committee's note; *Strong v. Bellsouth Telecomms., Inc.*, 137 F.3d 844, 853 (5th Cir. 1998) (holding the trial court did not abuse its discretion in considering the actual results of the settlement).  The federal Class Action Fairness Act of 2005 addresses this issue directly by tying the attorney fee award to "redeemed" coupons. Pub.L.No. 109-002, 119 Stat. 4 (2005).

Michael Northrup, *Restrictions on Class Action Attorney Fee Awards*, 46 S. Tex. L. Rev. 953 (Summer 1005), at n.83.

The noted federal jurist, the Honorable John F. Grady, in his article *Reasonable Fees:  A Suggested Value-Based Analysis for Judges*, 184 F.R.D. 131 (1999), states:

Response to Class Counsel's Status Report (Dkt. 130), etc.
- No. 05-03774 RMW                                                    7

> Is the recovery something the client is going to use? A benefit obtained for a client that is unused by the client does not justify a substantial fee.

Congress has demonstrated an a commitment to this principle in the wording of Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. §§ 77z-1(a)-(3)(B)(v)).

> Total attorneys' fees and expenses awarded by the court to attorneys for the plaintiff class [shall be based upon] the amount of any damages and prejudgment interest <u>actually paid to the class</u>.

*Id.* at § 77z-1(a)(6) (emphasis added).

See also the proposed Amendment of Senator Patrick Leahy to the Class Action Fairness Act of 2003.

> Leahy's bill would deal with noncash settlements — the coupon problem — by tying the part of the fee paid to class counsel to the value of the coupon settlements actually redeemed.... Leahy's bill is backed by consumer groups because it addresses [a] major problem in class actions: worthless coupon settlements ... said Jackson Williams, legislative counsel to Public Citizen's Congress Watch.
> "If the coupon is worthless and no one uses it, the attorney gets no compensation," he said. "It will force attorneys to fight the meritorious cases harder, which is good for consumers and good for business. Honestly, there are some class actions for trivial harms and they're only brought because of the possibility of a worthless coupon settlement."

Marcia Coyle, *Senate Eyes Competing Class Action Bills*, THE NATIONAL LAW JOURNAL (May 5, 2003).

Dated:  September 3, 2009

                                              Respectfully submitted,

                                              <u>/s/Lawrence W. Schonbrun</u>
                                              Lawrence W. Schonbrun
                                              Attorney for Plaintiff Class
                                              Member/Objector David Brennan

CERTIFICATE OF SERVICE

I declare that:

I am employed in the law firm of Lawrence W. Schonbrun, whose address is 86 Eucalyptus Road, Berkeley, California 94705. I am readily familiar with the business practices of this office. At the time of transmission I was at least eighteen years of age and not a party to this action.

On September 3, 2009, by electronic transmission via the Court's Electronic Case Filing system, I caused to be served a copy of the following documents:

    RESPONSE TO CLASS COUNSEL'S STATUS REPORT (Dkt. 130) AND
    PENDING REQUEST FOR ATTORNEYS' FEES (Dkts. 101, 103, 109)

on interested parties registered for e-filing in the within action.

In addition, on September 3, 2009, I served a copy of the above document:

__X__    By mail on the below-named parties in said action by placing a true and accurate copy thereof in a sealed envelope, with postage thereon fully prepaid, and depositing the same in the United States Mail to the addresses set forth below:

| | |
|---|---|
| Steven Messino<br>Vincere Group, CEO<br>P.O. Box 370825<br>Montara, CA 94037 | J. Martelino Jr., Esq.<br>Stonewall Jackson Professional Center<br>1520 West Main St., Ste. 201C<br>Richmond, VA 23220 |
| Daniel S. Brown, Esq.<br>Daniel Scott Brown Law Offices<br>131 Lawnview Circle<br>Danville, CA 94526 | Michael G. Kassis<br>318 Ironwood Circle<br>Roseville, CA 95678 |
| Joe Elek<br>1426 Robsheal Dr.<br>San Jose, CA 95125 | Carl Ragel<br>2143 N. Country Club Road #C<br>Tucson, AZ 85716 |
| John S. Wenstrand<br>35 Rondo Way<br>Menlo Park, CA 94025 | Eleanor Managad<br>671 N. Capitol Avenue<br>San Jose, CA 95133 |

1  Hon. Ronald M. White
2  Judge, U.S. District Court
   Northern District of
3  California, San Jose Division
   Courtroom 11, 19th Fl.
4  280 South First Street
   San Jose, CA 95113
5  (chambers copy)

6

7
         I declare under penalty of perjury that the foregoing is
8  true and correct.

9        Executed at Berkeley, California, on September 3, 2009.

10

11                              /s/Sandra Norris
                                Sandra Norris
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

Certificate of Service - No. 05-03774 RMW                              2